JOURNAL ENTRY and OPINION
{¶ 1} The court terminated the parental rights of mother Angel Howard, and committed three of her children into the county's custody. Howard claims the court erred because it lacked sufficient evidence to prove her inability to be a parent.
 {¶ 2} The children are currently nine, eight and seven years old. The county removed the oldest child in September 1996 after the paternal grandmother noticed marks on the child's face and back. The county placed the child with the paternal grandmother and he stayed with her for four months, at which time the county filed for custody of the child. The other two children were removed in December 1996 after they were found unattended on a street corner at 10:00 p.m. Both children were wearing diapers and carried their birth certificates, social security cards and WIC papers. The children were discovered because patrons of a nearby bar noticed the two children and called the county.
 {¶ 3} The county prepared a case plan for Howard that required her to obtain stable housing, stable employment and address her mental and emotional concerns. The requirement relating to Howard's mental health arose after she told the social worker that she had been hearing voices telling her to hurt her children. The social worker characterized Howard's compliance with the mental health aspect of the case plan as "noncompliant." He recalled that she missed scheduled appointments and then stopped going completely. She also refused to take medications. Parenting classes were eventually cancelled after five different attempts.
 {¶ 4} In June 1997, the county performed a psychiatric evaluation on Howard. At the time of that evaluation, Howard had been receiving counseling and had been previously diagnosed with manic-depressive illness and paranoid schizophrenia. Howard admitted to a suicide attempt and hearing voices telling her to hurt or kill other people. Particularly unnerving were Howard's descriptions of voices telling her to drown her daughter or let her youngest son fall into the bath water as she bathed him. A psychiatric test showed that Howard had a severe psycho-pathology manifested by "paranoid thought processes, persecutory delusional thought processes, * * * and auditory hallucinations * * *." The psychiatrist concluded that Howard "was not in a position to parent her children."
 {¶ 5} In October 1997, Howard sought treatment for auditory hallucinations. She told a psychiatrist that voices in her head had been telling her to kill her her daughter and youngest son. A narrative summary of Howard's discharge indicated a diagnosis of psychosis, not otherwise specified. The treating psychiatrist believed that the auditory hallucinations were brought about by stress related to the removal of Howard's children, which prompted excessive alcohol consumption. The psychiatrist clearly stated that at the time, she did not believe that Howard suffered from schizophrenia and recommended that Howard's visitation with her children be "strictly supervised."
 {¶ 6} The county referred Howard to parenting classes in December 1998. An initial psychiatric evaluation showed that Howard denied ever having any auditory hallucinations. She had also curbed a drinking problem that had plagued her for several years. Because of this, the psychiatrist wanted to retest Howard to see if there was "some leftover psychosis." Howard failed to appear for the scheduled test. This showed particularly poor judgment on Howard's part as she herself told the psychiatrist that the evaluation was the last phase of her case plan for regaining custody of her children. The psychiatrist went on to say that he questioned Howard's committment to regaining custody of her children in light of her poor attendance at parenting classes.
 I {¶ 7} The first issue raised relates to testimony originally taken on November 16, 1999, but missing from the record on appeal. Acting on an order of this court issued under authority of App.R. 9(E), the juvenile court reconstructed the missing testimony by way of hearing conducted on August 8, 2002. We are satisfied that the court fulfilled its obligations under App.R. 9(E). Having no objection from any of the parties as to the content of the reconstructed testimony, we find the first assignment of error moot.
 II {¶ 8} Howard claims the court's decision to grant permanent custody is against the manifest weight of the evidence. She argues that the county (a) failed to show that it made reasonable efforts to implement a case plan that would remedy the situations which caused the children to be removed, (b) failed to show that permanent custody was in the best interest of the children, and (c) failed to show that the children could not be placed with the mother within a reasonable period of time.
 {¶ 9} In order to terminate parental rights and grant permanent custody to a county agency, the agency must provide clear and convincing evidence that (1) the grant of permanent custody to the agency is in the best interest of the child, and (2) the child cannot be placed with either parent within a reasonable time or should not be placed with either parent. R.C. 2151.414(B)(1).
 A {¶ 10} Given the complaint filed in this case, the agency was required to prove that, with the ultimate goal of reuniting the family, it made diligent efforts to remedy the problems that initially caused the removal of the child from the home. See R.C. 2151.419(A); In re Anderson
(Mar. 22, 2001), Cuyahoga App. No. 78140. When considering the extent to which the county tried to reunite Howard and her children, the court is to consider "parental utilization of medical, psychiatric, psychological, and other social and rehabiliative services and material resources that were made available to the parents for the purpose of changing parental conduct to allow them to resume and maintain parental duties." See R.C. 2151.414(E)(1). A good faith effort to implement a reunification plan "means an honest, purposeful effort, free of malice and the design to defraud or to seek an unconscionable advantage." In reWeaver (1992), 79 Ohio App.3d 59, 63. "The issue is not whether the agency could have done more, but whether it did enough to satisfy the reasonableness standard under the statute." In re Hughley (Oct. 26, 2000), Cuyahoga App. No. 77052.
 {¶ 11} The reconstructed record shows that Howard did not comply with case plan requirements that she address her mental and emotional problems. The social worker assigned to the case testified that these goals were implemented in light of Howard's history of auditory hallucinations that were telling her to harm her children. A total of five mental health referrals were made, yet Howard remained "noncompliant." She did not regularly take prescribed medications, missed scheduled appointments, and failed to complete parenting classes.
 {¶ 12} The total number of referrals made convinces us that the county did make a good faith effort to assist Howard in implementing the case plan. All of the case plan goals were designed to ensure that Howard could safely resume her parenting duties, and there is no evidence whatsoever to suggest that the county acted with anything less than good faith.
 B {¶ 13} The bests interests of a child are determined by reference to the factors set forth in R.C. 2151.414(D):
 {¶ 14} "(1) The interaction and interrelationship of the child with the child's parents, siblings, relatives, foster caregivers and out-of-home providers, and any other person who may significantly affect the child;
 {¶ 15} "(2) The wishes of the child, as expressed directly by the child or through the child's guardian ad litem, with due regard for the maturity of the child;
 {¶ 16} "(3) The custodial history of the child, including whether the child has been in the temporary custody of one or more public children services agencies or private child placing agencies for twelve or more months of a consecutive twenty-two month period ending on or after March 18, 1999;
 {¶ 17} "(4) The child's need for a legally secure permanent placement and whether that type of placement can be achieved without a grant of permanent custody to the agency;
 {¶ 18} "(5) Whether any of the factors in divisions (E)(7) to (11) of this section apply in relation to the parents and child."
 {¶ 19} Clear and convincing evidence supported the court's determination that it was in the best interests of the children to be placed in the permanent custody of the county. The court heard evidence that Howard's mental state remained questionable in light of her refusal to follow through with treatment. Obviously, the danger that Howard could yield to the voices in her head and harm her children would require that the court proceed with the utmost caution when deciding if it was in the childrens' best interests to be reunited with her.
 {¶ 20} Howard vigorously defended accusations relating to her mental state by trying to show that her auditory hallucinations were brought about by alcohol abuse, not schizophrenia. She did not, however, present any expert testimony to that effect, and relied primarily on concessions by treating mental health professionals that alcoholism could bring out the kinds of auditory hallucinations she experienced. None of what those experts conceded, however, could be construed as indicating that they believed that Howard's auditory hallucinations were the sole product of her alcohol abuse. And in any event, Howard could not overcome evidence that she did suffer from schizophrenia that existed apart from her auditory hallucinations, so the best interests of the children nonetheless required the court to consider her mental condition apart from the auditory hallucinations. Finally, even if Howard could have shown that her auditory hallucinations were a direct result of her alcohol abuse, she did not present any evidence that she had controlled that abuse. With these conditions extant, the court had competent credible evidence to support its finding that permanent custody was in the best interests of the children.
 {¶ 21} Clear and convincing evidence also showed that Howard could not adequately parent the children. She failed to complete parenting classes. Morever, she failed to give any indication of her employment prospects at the time of hearing. The children had some visitation, but visitations were to be under strict supervision because of her auditory hallucinations. The paternal grandmother testified that Howard had even threatened to burn down the grandmother's home and confronted her at court hearings. All this evidence supported the court's determination that permanent custody would be in the best interests of the children.
 C {¶ 22} The last issue to be addressed in the permanent custody determination is the finding that the children could not be placed with the mother within a reasonable period of time. Given the evidence that Howard had not followed through with several attempts to treat her mental problems and had not completed parenting classes, the court had no reason to think that Howard would comply with those requirements in the future. The court did not err by finding that the children could not be reunited with Howard within a reasonable period of time.
 III {¶ 23} Howard's final argument is that the court erred by not placing the children in a planned permanent living arrangement. We summarily reject this argument as there is nothing in the record to suggest that Howard sought a planned permanent living arrangement as an alternative to permanent custody. See In re P.R., Cuyahoga App. No. 79609, 2002-Ohio-2029, at fn. 4. Moreover, the evidence which we have found fully supports the court's decision to grant the county permanent custody of the children also serves as evidence that a planned permanent living arrangement would not be in the best interests of the children.
Judgment affirmed.
It is ordered that appellee recover of appellant its costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Common Pleas Court — Juvenile Court Division to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
KENNETH A. ROCCO, P.J., and JAMES J. SWEENEY, J., CONCUR.
N.B. This entry is an announcement of the court's decision. See App.R. 22(B), 22(D) and 26(A); Loc.App.R. 22. This decision will be journalized and will become the judgment and order of the court pursuant to App.R.22(E) unless a motion for reconsideration with supporting brief, per App.R. 26(A), is filed within ten (10) days of the announcement of the court's decision. The time period for review by the Supreme Court of Ohio shall begin to run upon the journalization of this court's announcement of decision by the clerk per App.R. 22(E). See, also, S.Ct.Prac.R. II, Section 2(A)(1).